# EXHIBIT A

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, JENNY SHELTON, being duly sworn, state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to the Boston, Massachusetts Field Office. Since joining the FBI in 2019, I have been assigned to a squad that investigates corporate and securities fraud, including market manipulation and insider trading. I have received training in the use of surveillance techniques and the execution of search, seizure, and arrest warrants. Before my assignment to the Boston Field Office, I was employed as a Special Agent with the Air Force Office of Special Investigations at Joint Base Langley-Eustis, Virginia. I hold a Bachelor's degree in International Studies and a Master's degree in International Affairs.

2. Pursuant to this affidavit and criminal complaint, I seek to charge DAVID FORTE ("DAVID FORTE"), JOHN YOUNIS ("YOUNIS"), and GREGORY MANNING ("MANNING") with conspiracy to commit securities fraud, in violation of Title 18, United States Code, Section 371. Specifically, I have probable cause to believe that DAVID FORTE, YOUNIS, and MANNING conspired with each other to engage in an insider trading scheme based on material, non-public information ("MNPI") about the acquisition by Analog Devices, Inc. ("Analog" or "ADI"), a publicly traded company based in Norwood, Massachusetts, of Linear Technology Corp. ("Linear" or "LLTC"), then a publicly traded company based in Milpitas, California, announced in July 2016.

3. Because this affidavit is being submitted for the limited purpose of demonstrating that there is probable cause to arrest DAVID FORTE, YOUNIS, and MANNING on the federal criminal charge set forth above, I have not included each and every fact known to me and to

other law enforcement officers involved in this investigation. Rather, I have included only those facts that I believe are necessary to establish probable cause for the issuance of the requested warrant. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from witnesses and others, including other agents working on the criminal investigation as well as the Securities and Exchange Commission ("SEC") and the Financial Industry Regulatory Authority ("FINRA").

## RELEVANT PERSONS AND ENTITIES

4. DAVID FORTE, age 58, is a resident of Acton, Massachusetts. He is a Police Officer with the Needham Police Department. DAVID FORTE is the brother of ▮▮▮▮



5. ▮▮▮▮ age 60, is a resident of Canton, Massachusetts. He is a ▮ ▮▮▮▮ of Analog. As an Analog employee, ▮▮▮ is subject to Analog's "Policy on Securities Trading," which, in substance, prohibits employees from trading in another company's stock while in possession of MNPI and from disclosing MNPI to others who might buy or sell securities on the basis of that MNPI.

6. YOUNIS, age 59, is a resident of Bristol, Rhode Island. He owns and operates a construction company based in Wrentham, Massachusetts. At relevant times, YOUNIS maintained a brokerage account with a major financial services provider ("Financial Services Provider 1").

7. MANNING, age 59, is a self-employed resident of Needham, Massachusetts. At relevant times, MANNING and his spouse maintained brokerage accounts with a major financial services provider ("Financial Services Provider 2").

2

8.     DAVID FORTE, YOUNIS, and MANNING grew up together and belonged to a group of friends that took annual vacations together.

9.     PERSON 1 is a resident of Johnston, Rhode Island and the owner of a demolition company based in Rhode Island.  PERSON 1 maintained a brokerage account with a major financial services provider ("Financial Services Provider 3").  According to statements PERSON 1 made to investigators, PERSON 1 maintained a business relationship with YOUNIS and purchased pre-fabricated steel buildings from YOUNIS's construction company on several occasions.

10.    Analog is a public company that designs and manufactures semiconductor products.  Analog shares trade on the NASDAQ Stock Market under the ticker symbol ADI.

11.    Linear was, at relevant times, a public company that designed and manufactured analog integrated circuits.  At relevant times, Linear shares traded on the NASDAQ Stock Market under the ticker symbol LLTC.  Analog completed its acquisition of Linear in or about March 2017.

## THE ANALOG-LINEAR MERGER

12.    According to a chronology Analog provided to FINRA, Analog's chief executive officer, Vincent Roche, raised the possibility of a merger with Linear during a telephone conversation with Robert Swanson, Linear's founder and executive chairman, in or about July 2015.

13.    On or about April 5, 2016, Analog submitted to Linear's board of directors a non-binding indication of interest in acquiring Linear in a combination cash/stock deal.

14. Analog and Linear entered into a nondisclosure agreement on or about May 24, 2016, and Analog thereafter began conducting due diligence of Linear.

15. On or about June 22, 2016, Analog submitted a proposal to acquire Linear for $60 per share.

16. Linear's board of directors approved the company's entry into an exclusivity agreement with Analog on or about July 13, 2016.

17. On or about July 26, 2016, Linear's board of directors approved a merger agreement. That same day, at approximately 3:35 p.m. EST[1], Analog announced that it had entered into a definitive agreement to acquire Linear for approximately $14.8 billion in cash and stock. Under the terms of the agreement, Linear shareholders would receive $46.00 per share in cash and 0.2321 of a share of ADI common stock for each share of LLTC common stock they held at closing. The purchase price represented a premium of approximately 24 percent over Linear's closing price before the announcement.

## THE INSIDER TRADING CONSPIRACY

18. Based on the evidence described herein, I have probable cause to believe that, in or about and between June and August 2016, DAVID FORTE, YOUNIS, and MANNING engaged in a fraudulent scheme whereby YOUNIS and MANNING executed securities transactions based on MNPI provided by DAVID FORTE, who obtained the information from his brother, ███████████ in violation of the duties of trust and confidence that ███

---

[1] All time stamps associated with phone calls or trades described herein are in Eastern Standard Time.

███ owed to Analog as its employee and/or the duties of trust and confidence that DAVID FORTE owed to ███████ as his brother.

19. Telephone records indicate that, from around the date that ███████ became aware of the merger discussions and continuing through the date of the merger, DAVID FORTE had numerous communications with ███████ on the one hand, and with YOUNIS and MANNING, on the other. Brokerage records demonstrate that these communications coincided with purchases of LLTC securities by YOUNIS and MANNING. Telephone and brokerage records also reflect communications between YOUNIS and PERSON 1 that coincided with purchases of LLTC shares by PERSON 1.

*Trades in LLTC Securities*

20. According to information that Analog provided to FINRA, ███████ became aware of the merger discussions between Analog and Linear on June 22, 2016, the same day that Analog submitted its acquisition proposal to Linear.

21. Telephone records indicate that DAVID FORTE called ███████ later that same day, at approximately 6:56 p.m. The call lasted approximately one minute.

22. On or about July 14, 2016, ███████ was forwarded an email from Analog management informing certain Analog employees that "[s]ignificant progress has been made" with respect to Analog's bid to acquire Linear and requesting that employees complete reports related to the due diligence of Linear.

23. On or about Friday, July 15, 2016—two days after Linear's board of directors approved the company's entry into an exclusivity agreement with Analog—███████ received multiple emails regarding due diligence action items and a diligence telephone call

5

scheduled for later that day.  One of these emails noted that the "extremely tight schedule" for due diligence of the deal "will likely require work over the weekend[.]"  A subsequent email requested that certain employees, including ▮▮▮▮▮▮▮▮ submit their "Due Diligence reporting" and "synergy summaries" by the end of the following Monday, July 18, 2016.

24.     On or about Sunday, July 17, 2016—the day before ▮▮▮▮▮▮▮▮ submitted his synergy report—DAVID FORTE called ▮▮▮▮▮▮▮▮ at approximately 12:03 p.m.  The call lasted approximately nine minutes.  At approximately 1:17 p.m., DAVID FORTE called a cell phone subscribed to YOUNIS's construction company.  The call lasted approximately three minutes.  Based on YOUNIS's ownership of the construction company and the fact that YOUNIS provided this telephone number to Financial Services Provider 1 and called Financial Services Provider 1 from the same number, I believe that the cell phone is used by YOUNIS.

25.     The following day, Monday, July 18, 2016, YOUNIS deposited $60,000 into his brokerage account with Financial Services Provider 1.  Prior to the deposit, the account had a value of less than $500, all of which was held in a money market account, and there had been no account activity since in or around October 2015.

26.     On or about Tuesday, July 19, 2016, YOUNIS called DAVID FORTE at approximately 2:54 p.m.  YOUNIS called DAVID FORTE again the following day, Wednesday, July 20, 2016, at approximately 8:51 a.m. YOUNIS and PERSON 1 also spoke by telephone that same day.

27.     Emails and calendar entries reflect that ▮▮▮▮▮▮▮▮ continued to work on deal-related action items between July 19 and July 22, 2016.  For example, ▮▮▮▮▮▮▮▮

work calendar reflects a 90-minute period of "integration planning" on Wednesday, July 20, 2016.

28.     On or about Thursday, July 21, 2016, DAVID FORTE called ▮▮▮▮▮▮▮▮ at approximately 11:29 a.m.  The call lasted approximately two minutes.  Beginning at approximately 12:38 p.m., several calls were placed to YOUNIS from a phone number linked to a real estate company where DAVID FORTE worked part-time as a landscaper.[2]  The final call from that number to YOUNIS occurred at approximately 1:12 p.m.  Approximately four minutes later, at 1:16 p.m., YOUNIS called Financial Services Provider 1.  During the call, which was consensually recorded by Financial Services Provider 1, YOUNIS indicated that he wanted to buy 35 LLTC August call options, with a strike price of $48 per share.[3]  (That same day, shares of LLTC opened at $47.99 per share and closed at $47.94.)  The representative at Financial Services Provider 1 informed YOUNIS, in substance, that his $60,000 deposit had not yet

---

[2] Investigators interviewed personnel at the real estate company, who stated that the telephone number was used by the company's maintenance employees; that, in 2016, DAVID FORTE worked part-time for the company as a landscaper; and that, at that time, DAVID FORTE had access to that telephone line.  According to the real estate company personnel, the company also employed DAVID FORTE's brother-in-law, as well as another brother of DAVID FORTE and ▮▮▮▮▮▮▮.

[3] Call options are a way of profiting from the near-term appreciation of a stock's price, but such options are worthless if the stock's price does not appreciate beyond the strike price, by at least the cost of the option, by the time the option expires.  For example, an August call option with a $48 strike price is a bet that the price of the stock will exceed $48, by at least the amount of the option price, by the date in August when the option expires.  Put options are a way of profiting from a decline in the stock's price.  Short-term options are considered risky, because the stock must appreciate (or decline in value) in a short period of time for the option to have value.  Options are traded in units called contracts.  Each contract entitles the option buyer/owner to 100 shares of the underlying stock upon expiration.  The strike price is the price at which the holder of an option can buy (in the case of a call option) or sell (in the case of a put option) the underlying security when the option is exercised.

cleared and was not scheduled to be available to him until the following day, but that she would nonetheless allow him to purchase the securities. The total cost of the purchase was approximately $4,800.

29. That evening (July 21, 2016), at approximately 9:00 p.m., DAVID FORTE called a phone number subscribed to MANNING's spouse. The call had a duration of approximately one minute. Although the phone number is subscribed to MANNING's spouse, I believe that MANNING used this phone number, because MANNING listed this phone number as the primary contact number for his account with Financial Services Provider 2 and because MANNING's spouse did not list this phone number as the primary or secondary phone number in any of her account documents from Financial Services Provider 2. DAVID FORTE's very next call, at approximately 9:01 p.m., was to his brother, ▮▮▮▮▮▮▮▮ DAVID FORTE and ▮▮▮▮▮▮▮▮ thereafter exchanged multiple phone calls, with the last call occurring at approximately 9:32 p.m.

30. DAVID FORTE's very first call the next morning, Friday July 22, 2016, was to YOUNIS, at approximately 7:11 a.m. The call had a duration of approximately two minutes.

31. Later that same morning, at approximately 8:21 a.m. and again at 9:40 a.m., DAVID FORTE called MANNING. Both calls had a duration of approximately one minute. Two minutes after the latter call, at approximately 9:42 a.m., MANNING's account with Financial Services Provider 2 showed an order to purchase 1,000 Linear shares. The order executed at a price of approximately $47.83 per share, for a total cost of approximately $47,840.

32.     At approximately 12:05 p.m. that same day, YOUNIS's account with Financial Services Provider 1 purchased a total of 1,100 shares of LLTC stock, at prices of between $48.20 and $48.21 per share. The total amount of the purchases was approximately $53,034.

33.     At approximately 12:44 p.m. that same day, YOUNIS called PERSON 1. PERSON 1 then called YOUNIS at 2:02 p.m. Four minutes later, PERSON 1 entered an order to buy 1000 shares of LLTC in his brokerage account at Financial Services Provider 3. At the time, the balance in the account was approximately $265. According to call notes maintained by Financial Services Provider 3, PERSON 1 advised the representative at Financial Services Provider 3 that "[h]e was talking to a buddy and heard about LLTC. He wanted to buy 1000 shares and asked if he could do it today even though the cash was not in the account." The representative at Financial Services Provider 3 advised PERSON 1, in substance, that he could proceed with the purchase but would need to deposit the funds into the account before the purchase settled. The order executed at a price of approximately $48.26 per share, for a total cost of approximately $48,885. PERSON 1 subsequently deposited $50,000 into the account to pay for the purchase.

34.     DAVID FORTE called MANNING on or about Sunday, July 24, 2016, at approximately 5:06 p.m., and again on or about Monday, July 25, 2016, at approximately 9:15 a.m. The calls had a duration of approximately one minute each. At approximately 9:19 a.m. on July 25, 2016, MANNING called DAVID FORTE. The call had a duration of approximately four minutes. Later that morning, at approximately 10:57 a.m., MANNING's account with Financial Services Provider 2 purchased an additional 750 Linear shares, at a price of approximately $48.52 per share, for a total cost of approximately $36,398.

9

35. On or about Tuesday, July 26, 2016, before the public announcement of the merger that afternoon, DAVID FORTE continued to place calls to, and receive calls from, each of MANNING and YOUNIS, and MANNING and YOUNIS continued to place trades in LLTC securities.

36. For example, DAVID FORTE called MANNING at approximately 7:50 a.m. At approximately 9:38 a.m., MANNING's brokerage account entered an order to purchase 500 shares of LLTC. The order executed at a price of $49.53 per share, for a total cost of approximately $24,780.

37. DAVID FORTE called MANNING again at approximately 10:30 a.m. MANNING called DAVID FORTE at approximately 11:30 a.m. At approximately 12:04 p.m., a brokerage account in the name of MANNING's spouse purchased 750 shares of LLTC for a total cost of approximately $36,916.

38. At approximately 12:11 p.m., YOUNIS purchased 12 LLTC put options, with a strike price of $45 per share and an expiration date of August 19, 2016. The total cost of the purchase was approximately $361. Based on my training and experience, I believe that YOUNIS's purchase of put options is consistent with a hedging strategy in connection with his purchase of LLTC call options.

39. At approximately 2:23 p.m., the Bloomberg news service reported that Analog was in "advanced talks" to acquire Linear.

40. YOUNIS called DAVID FORTE three times, at approximately 2:23 p.m., 2:27 p.m., and 2:31 p.m., at which point the two men spoke for approximately three minutes. YOUNIS's very next call, at 2:35 p.m., was to PERSON 1.

41. DAVID FORTE's next two calls, at approximately 2:39 p.m. and 2:44 p.m., were to MANNING. One minute later, DAVID FORTE called YOUNIS.

42. At approximately 2:47 p.m., NASDAQ halted trading in shares of LLTC.

43. At approximately 2:50 p.m., DAVID FORTE called ▮▮▮▮▮▮▮▮

44. At approximately 2:55 p.m., YOUNIS placed an order to sell 35 LLTC call options at a limit price of $15.20.[4] The order did not execute.

45. YOUNIS called DAVID FORTE again at approximately 3:01 p.m. At approximately 3:05 p.m., PERSON 1 called YOUNIS, who returned the call shortly thereafter.

46. At approximately 3:35 p.m. on July 26, 2016, Analog and Linear issued a press release formally announcing that Analog would acquire Linear.

47. After the announcement, DAVID FORTE called MANNING four times between approximately 3:59 p.m. and 6:30 p.m., and PERSON 1 called YOUNIS at 4:53 p.m.

48. YOUNIS called DAVID FORTE three times the following morning, Wednesday, July 27, 2016, at approximately 8:40 a.m., 9:31 a.m., and 9:37 a.m. Between 9:33 and 9:44 a.m., YOUNIS entered orders to sell 35 LLTC call options and 1100 LLTC shares. From these sales, YOUNIS earned a profit of nearly $52,000 on his investment in Linear securities, representing a return of approximately 89 percent over the course of less than a week.

49. That same morning, at approximately 9:30 a.m., PERSON 1 entered an order to sell the 1,000 Linear shares that he had purchased five days earlier. The order executed at a price

---

[4] A limit order is an order to buy or sell a security for a specific price or better. A sell limit order can only be executed at the limit price or higher. A limit order can only be filled if the security's market price reaches the limit price.

of approximately $60.50 per share, for a profit of approximately $11,017, representing a gain of approximately 23 percent over the course of less than a week.

50.     Also that morning, MANNING's brokerage account entered a limit order to sell all 2,250 shares of Linear he had purchased over the prior week. The order executed at approximately 9:38 a.m., at a price of $60.36 per share, for a total profit of approximately $26,772, representing a return of nearly 25 percent on the investment in the span of a few days. The LLTC shares in the brokerage account of MANNING's spouse were also sold that same day (executed at 9:51 a.m.), one day after they were purchased, for a one-day profit of nearly $7,979, representing a return of nearly 22 percent.

51.     At approximately 10:28 a.m. that morning, DAVID FORTE called YOUNIS. At approximately 10:35 a.m., YOUNIS called PERSON 1. Beginning at approximately 12:23 p.m., DAVID FORTE called MANNING three times, with the longest call at 12:52 p.m., lasting 19 minutes.

*Statements to Investigators*

52.     Investigators interviewed MANNING, YOUNIS, DAVID FORTE, and PERSON 1 on or about April 7, 2021 in connection with this investigation.

53.     MANNING stated to investigators that DAVID FORTE had told MANNING that ADI or LLTC each were "good bet[s]." MANNING told investigators that, during one or more discussions with DAVID FORTE, DAVID FORTE had referenced Analog and Linear in the same sentence, in a manner that MANNING understood implied that there would be a merger between the two companies. MANNING told agents that DAVID FORTE had told MANNING that DAVID FORTE's information regarding LLTC was based on "good confidence."

12

MANNING also told investigators that he had felt confident about investing in LLTC because DAVID FORTE's brother, ████████ was an executive at Analog. MANNING stated that he did not know whether ████████ had intentionally provided information to DAVID FORTE regarding the merger or if DAVID FORTE had intuited something from ████████ travel schedule or remarks; however, MANNING stated that he was "smart enough to know" that the information had come from ████████ MANNING told investigators that he and DAVID FORTE had discussed MANNING's purchases of LLTC stock. MANNING also told investigators that, between the time of DAVID FORTE's initial recommendation regarding LLTC and the announcement of the merger, MANNING and DAVID FORTE had had ongoing "confidence building" conversations via telephone regarding MANNING's investment in LLTC. MANNING told investigators that DAVID FORTE had advised MANNING that "everything still looked good" during these conversations and that MANNING had made additional purchases of LLTC based on these confidence building discussions.

54.     MANNING also told investigators that he had given DAVID FORTE a "couple of thousand" dollars in cash several months after the merger announcement. MANNING told investigators that he had withdrawn the cash from his bank account shortly after MANNING had received a bonus.[5] MANNING told investigators that he believed he might have said, in sum and substance, "good trade" when he gave the cash to DAVID FORTE. MANNING also told

---

[5] Bank records reflect that MANNING deposited a $40,000 check and simultaneously withdrew $5,000 in cash on or about August 17, 2016. Based on my training and experience and my knowledge of this investigation, I believe MANNING paid DAVID FORTE from this $5,000 cash withdrawal.

13

investigators that the cash he gave to DAVID FORTE was "obviously" payment for DAVID FORTE's information regarding LLTC.

55. YOUNIS told investigators that he knew that DAVID FORTE's brother, ▉▉▉▉ worked at Analog. YOUNIS told investigators that DAVID FORTE had told YOUNIS that LLTC was a good buy. YOUNIS also stated to investigators that he had discussed LLTC with PERSON 1 and that PERSON 1 had known that YOUNIS traded in LLTC.

56. DAVID FORTE denied having recommended that MANNING or YOUNIS invest in LLTC or having told either of them that Analog and Linear were planning a merger prior to the merger. He also denied having received cash from MANNING in connection with MANNING's investment in LLTC. DAVID FORTE reported to investigators that ▉▉▉▉ had not told him that Analog and Linear were contemplating a merger prior to the announcement of the merger.

57. PERSON 1 reported to investigators that he had learned about Linear from YOUNIS, with whom PERSON 1 had a business relationship and from whom PERSON 1 purchased steel buildings. Investigators subsequently interviewed PERSON 1 pursuant to a proffer letter agreement[6] on May 4, 2021. PERSON 1 explained to investigators, in sum and substance, that YOUNIS had not identified the source of his information about LLTC to PERSON 1, but that YOUNIS had told PERSON 1 to trust him and had led PERSON 1 to believe that PERSON 1 should act quickly on the tip and buy LLTC stock.

---

[6] PERSON 1 was interviewed by the government pursuant to a standard "proffer" agreement, under which his statements cannot be used against him in any proceeding, except in limited circumstances such as if he is untruthful.

58. Investigators interviewed ▓▓▓▓▓▓ pursuant to a proffer letter agreement on July 30, 2021. In sum and substance, ▓▓▓▓▓▓ denied telling any persons outside of Analog about the proposal to acquire Linear. ▓▓▓▓▓▓ stated that he could not rule out the possibility that DAVID FORTE had figured out that Analog was acquiring Linear from him, but that he believed that it was unlikely that he (▓▓▓▓▓▓) would have let something about the merger "slip out."

## CONCLUSION

59. Based on my knowledge, training, and experience, and the facts set forth in this affidavit, I have probable cause to believe, and I do believe, that DAVID FORTE, YOUNIS, and MANNING conspired to commit securities fraud, in violation of Title 18, United States Code, Section 371.

Respectfully submitted,

/s/ Jenny Shelton

JENNY SHELTON
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to by telephone in accordance with
Federal Rule of Criminal Procedure 4.1

Dated: January 18, 2022

*Page Kelley*

HONORABLE M. PAGE KELLEY
United States Magistrate Judge

